UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IDA MANHEIM, ET AL. | CIVIL ACTION |
| VERSUS | NO. 23-4343 |
| INDEPENDENT SPECIALTY INSURANCE COMPANY, ET AL. | SECTION "R" (1) |

## ORDER AND REASONS

Before the Court is defendants Independent Specialty Insurance Company ("ISIC") and Certain Underwriters at Lloyd's, London and Other Insurers Subscribing to Binding Authority B604510568622021's ("Certain Underwriters") motion to compel arbitration and stay the proceedings or, alternatively, to dismiss the action.[1]  Plaintiffs oppose the motion.  For the following reasons, the Court grants in part and denies in part the motion.

### I.   BACKGROUND

Plaintiff Ida Manheim is the owner of an antique shop located on Royal Street in New Orleans, Louisiana, that was allegedly damaged during Hurricane Ida on August 29, 2021.[2]  At the time of the hurricane, the

---

1   R. Doc. 9.
2   R. Doc. 1-1 ¶¶ 7-8.

property was covered by an insurance policy issued by defendants.[3] Plaintiffs allege that defendants failed to make appropriate payments pursuant to the policy, and have asserted causes of action for breach of the insurance contract and breach of the duty of good faith and fair dealing.[4] Defendants removed the action, invoking federal-question jurisdiction because the subject matter of the case relates to an arbitration agreement enforceable under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention" or "Convention"), and the Federal Arbitration Act ("FAA").[5] On October 17, 2023, Magistrate Judge Janis van Meerveld granted defendants' motion to opt-out of the Court's Streamlined Settlement Program.[6]

Defendants now move to compel arbitration and to stay proceedings pending arbitration.[7] Defendants contend that arbitration is mandated under the following provision within the insurance policy:[8]

> All matters in dispute between [the parties] in relation to this insurance, including this policy's formation and validity, and whether arising during or after the period of this insurance, shall

---

[3]  *Id.* ¶¶ 9-14.
[4]  *Id.* ¶¶ 62-77.
[5]  R. Doc. 1. *See also* 9 U.S.C. § 205 (providing for removal of actions when the subject matter "relates to an arbitration agreement or award falling under the Convention").
[6]  R. Doc. 14.
[7]  R. Doc. 9.
[8]  R. Doc. 1-3 at 37.

2

be referred to an Arbitration Tribunal in the manner described below.

The arbitration provision further states that "[a]ny arbitration hearing shall take place in Nashville, Tennessee, unless some other locale is agreed to by the Arbitrator or Arbitrator Tribunal."[9]

In opposition, plaintiffs contend that the arbitration clause is unenforceable because it is not an "agreement in writing" signed by both parties covered under the Convention.[10] Plaintiffs further assert that ISIC cannot avail itself of the arbitration provision because it is a domestic defendant.[11]

The Court considers the motion below.

## II.  LAW AND DISCUSSION

### A.  Validity of the Arbitration Clause

The New York Convention is an international treaty that provides citizens of the signatory countries with the right to enforce arbitration agreements. The purpose of the Convention is "to encourage the recognition and enforcement of commercial arbitration agreements in international

---

[9]   *Id.* at 38.
[10]  R. Doc. 15.
[11]  *Id.*

3

contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n. 15 (1974). In 1970, the United States acceded to the Convention, and Congress enacted implementing legislation in Chapter 2 of the FAA, 9 U.S.C. §§ 201-208. *See GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1644 (2020). Chapter 2, often referred to as the "Convention Act," provides for the New York Convention's enforcement, grants federal courts jurisdiction over actions governed by the Convention, and empowers the courts to compel arbitration. 9 U.S.C. §§ 201, 203, 206; *see also Francisco v. STOLT ACHIEVEMENT MT*, 293 F.3d 270, 273 (5th Cir. 2002 ("Chapter 2 is the Convention Action."). Chapter 1 of the FAA, 9 U.S.C. §§ 1-16, serves as the primary domestic source of federal arbitration law. *Todd v. Steamship Mut. Underwriting Ass'n (Bermuda) Ltd.*, 601 F.3d 329, 332 (5th Cir. 2010). Chapter 1 applies to actions brought under the Convention to the extent that it does not conflict with the Convention or its implementing legislation. 9 U.S.C. § 208; *Todd*, 601 F.3d at 332; *see also McDermott Intern., Inc. v. Lloyds Underwriters of London*, 120 F.3d 583, 588 (5th Cir. 1997) ("[T]he FAA is the approximate domestic equivalent of the Convention such that the Convention Act incorporates the FAA except

4

where the FAA conflicts with the Convention Act's few specific provisions." (citation and internal quotation marks omitted) (alterations omitted)).

"In determining whether the Convention requires compelling arbitration in a given case, courts conduct only a very limited inquiry." *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 339 (5th Cir. 2004). The Court "should compel arbitration if (1) there is a written agreement to arbitrate the matter; (2) the agreement provides for arbitration in a Convention signatory nation; '(3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen.'" *Id.* (quoting *Francisco*, 293 F.3d at 274 ). Once these factors have been found to exist, a court must order arbitration "unless it finds that the [arbitration] agreement is null and void, inoperative or incapable of being performed." *Id.* (citation and internal quotation marks omitted).

Here, it is uncontested that the second, third, and fourth requirements are satisfied. The agreement provides for arbitration in a signatory nation, namely the United States, and specifically in Nashville, Tennessee.[12] The arbitration agreement also arises out of a commercial legal relationship through the contract of insurance between plaintiffs and defendants. *See* 9

---

12      R. Doc. 1-3 at 38.

U.S.C. § 202. Finally, at least one party to the agreement, Certain Underwriters, is not a citizen of the United States, as at least one subscribing syndicate is a citizen of England and Wales. *See Certain Underwriters at Lloyd's, London v. Prop. Risk Servs. Mgmt. II*, No. 3:19-CV-1696, 2019 WL 5318566, at *3 (N.D. Tex. Oct. 21, 2019) (finding that a dispute would fall under the Convention as long as one of the subscribers to the insurance policy was not an American citizen). Thus, the only requirement at issue is whether there is a written agreement to arbitrate the matter.

Article II of the New York Convention provides, in relevant part, that "the term 'agreement in writing' shall include an arbitral clause in a contract or an arbitration agreement, *signed by the parties* or contained in an exchange of letters or telegrams." New York Convention art. II, June 7, 1959, 330 U.N.T.S. 3 (emphasis added). Here, the "agreement in writing" consists of an arbitral clause in the parties' insurance policy, which provides that the parties must submit "[a]ll matters in dispute" relating to the policy to arbitration.[13] Plaintiffs argue that because Manheim did not sign the insurance policy, the arbitral clause does not constitute an agreement in writing under the meaning of Article II.

---

[13] *Id.* at 37.

Plaintiffs' argument is foreclosed by Fifth Circuit precedent. In *Sphere Drake Insurance PLC v. Marine Towing, Inc.*, 16 F.3d 666 (5th Cir. 1994), the Fifth Circuit construed Article II of the Convention to require either:

(1) an arbitral clause in a contract *or*

(2) an arbitration agreement,

    (a) signed by the parties or

    (b) contained in an exchange of letters or telegrams.

*Id.* at 669 (emphasis added). The court held that "[b]ecause what is at issue here is an arbitral clause in a contract, the qualifications applicable to arbitration agreements," *i.e.*, the requirement that the agreement be signed, "do not apply." *Id.* Put another way, the Fifth Circuit determined that the phrase "signed by the parties," modified only "an arbitration agreement" and not "an arbitral clause in a contract"; therefore, "an arbitral clause in a contract" need *not* be signed by the parties. *See id.* at 669-70; *see also Neptune Shipmanagement Servs. PTE, Ltd. v. Dahiya*, 15 F.4th 630, 638 (5th Cir. 2021) ("Fifth Circuit caselaw holds that Article II does not require a signature when the arbitration clause is part of a broader contract." (citing *Sphere Drake*, 16 F.3d at 669)).

The Court recognizes that the Fifth Circuit's holding on this point is the minority view among circuits, and that the Fifth Circuit itself has suggested

7

that it may reconsider the *Sphere Drake* ruling in the future. *See Neptune Shipmanagement*, 15 F.4th at 638, 638 n.5 (recognizing that the Fifth Circuit's "view may now be in the minority" and collecting out-of-circuit cases rejecting the *Sphere Drake* approach). But unless and until the Fifth Circuit or the Supreme Court rules otherwise, *Sphere Drake* remains the law of this circuit and binding on this Court. Accordingly, the arbitral clause in the insurance contract between plaintiffs and defendants is binding even though it was not signed by Manheim.

The Court thus finds that all four requirements are satisfied, and the agreement is enforceable under the New York Convention.

### B.     Equitable Estoppel

Plaintiffs contend that, even if Certain Underwriters is entitled to compel arbitration, the motion should be denied as to domestic defendant ISIC.[14] Plaintiffs assert that the insurance policy at issue consists of two separate contracts: one between Certain Underwriters and Manheim, and one between ISIC and Manheim.[15] As such, plaintiffs maintain that each policy should be treated as a separate contract for purposes of the application

---

14      R. Doc. 15 at 20-24.
15      *Id.*

8

of the New York Convention.[16] Because the Convention requires the presence of a foreign party to the agreement, and ISIC is an American citizen, plaintiffs thus contend that ISIC cannot compel arbitration under the Convention or Louisiana law.

The insurance agreement at issue here lists each defendant-insurer separately and each contract with each defendant-insurer under a different policy number.[17] Further, the policy's several liability clause clarifies that, "[a]lthough reference is made at various points in this clause to 'this contract' in the singular, where the circumstances so require this should be read as a reference to the contracts *in the plural*."[18] The policy also states that the contract "shall be constructed as a separate contract between the named insured and each of the insurers."[19] Thus, the plain language of the insurance policy indicates that it must not be read "as one contract but as several bound together for convenience and by commonality." *Southland Square Apartments, L.L.C. v. Certain Underwriters at Lloyd's, London*, No. 23-2329, 2023 WL 6458844, at *3 (E.D. La. Oct. 4, 2023) (interpreting similar insurance policy).

---

16   *Id.*
17   R. Doc. 1-3 at 2, 63, 69.
18   *Id.* at 61 (emphasis added).
19   *Id.* at 64.

9

Facially, it would appear, then, that only the arbitration clause within the insurance policy with the foreign defendant-insurer, Certain Underwriters, is enforceable under the New York Convention, while domestic defendant-insurer, ISIC, cannot avail itself of the Convention. *See id.* This is because the Convention applies to preempt Louisiana law only when a party to the arbitration agreement is not an American citizen. *See Freudensprung*, 379 F.3d at 339. Plaintiffs therefore assert that Louisiana law—which generally prohibits the use of arbitration clauses in insurance contracts—applies to the arbitration provision in the separate insurance policy with ISIC, precluding ISIC's ability to arbitrate.[20] *See* La. Stat. Ann. § 22:868(A) ("No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state . . . shall contain any condition, stipulation, or agreement . . . [r]equiring it to be construed according to the laws of any other state or country . . . [or] [d]epriving the courts of this state of the jurisdiction or venue of action against the insurer.").

Nevertheless, the doctrine of equitable estoppel prevents a plaintiff from objecting to arbitration with a domestic defendant-insurer when the claims against all defendants, foreign and domestic, are inextricably

---

[20] R. Doc. 15.

10

intertwined. *See Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 526 (5th Cir. 2000); *see also GE Energy*, 140 S. Ct. at (holding that the Convention does not conflict with the enforcement of arbitration agreements by domestic defendants under domestic-law equitable estoppel doctrines). This form of estoppel applies when a plaintiff has alleged "substantially interdependent and concerted misconduct" on the part of both the domestic defendant and the foreign insurer. *Id.* at 527 (citation and internal quotation marks omitted); *see also id.* at 529 (noting that "whether to utilize equitable estoppel in this fashion is within the district court's discretion"). The Fifth Circuit has explained that such estoppel is warranted because "[o]therwise the arbitration proceedings between the [plaintiff and the foreign defendant] would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted." *Id.*; *see also Holts v. TNT Cable Contractors, Inc.*, No. 19-13546, 2020 WL 1046337, at *4 (E.D. La. Mar. 4, 2020) ("Arbitrating claims against [one defendant] while litigating claims against [others] could yield inconsistent results, waste time and resources, and thwart federal policy favoring arbitration.").

The Court finds that plaintiffs have alleged substantially interdependent and concerted misconduct by both Certain Underwriters, as the party to a valid and enforceable arbitration clause, and ISIC, as the non-

11

party. Plaintiffs' state-court petition refers collectively to Certain Underwriters and ISIC as "defendants," and makes all allegations against both defendants without differentiation.[21] For instance, plaintiffs allege that defendants together entered into a contract of insurance with Manheim, initiated the loss assessment through the same property inspection, and issued a single estimate of damages based on that inspection.[22] Plaintiffs further allege that defendants, collectively, violated their obligations under the policy when they wrongfully denied the insurance claim, wrongfully excluded coverage for substantial damages, and failed to tender amounts due under the policy.[23] Defendants, without differentiation, are thus alleged to have acted arbitrarily and capriciously, in violation of Louisiana law, and in breach of the insurance contract.[24] "As a result of the actions of [d]efendants," plaintiffs seek damages and statutory penalties jointly assessed upon defendants.[25]

By failing to differentiate the wrongdoing of each defendant, plaintiffs allege interdependent claims. As such, "[f]airness—the 'linchpin' of equitable estoppel—militates against arbitrating [plaintiffs'] claims against

---

[21]   *See* R. Doc. 1-1.
[22]   *Id.* ¶¶ 5, 7, 11, 21-24.
[23]   *Id.* ¶¶ 28-30.
[24]   *Id.* ¶¶ 55-78.
[25]   *Id.* ¶¶ 65-67, 76-78.

12

[Certain Underwriters] while litigating [their] identical claims against [ISIC]." *Holts*, WL 1046337, at *4 (citing *Grigson*, 210 F.3d at 528). The Court must therefore compel arbitration as to both the foreign defendant, Certain Underwriters, and the domestic defendant, ISIC. *See Southland Square Apartments*, 2023 WL 6458844, at *3 (finding equitable estoppel applicable in hurricane insurance case under a nearly identical policy when conduct by foreign defendant-insurers and domestic defendant-insurers was substantially intertwined); *City of Kenner v. Certain Underwriters at Lloyd's, London*, No. 21-2064, 2022 WL 307295, at *3 (E.D. La. Feb. 2, 2022) (same).

### C. Choice of Law

Finally, plaintiffs request that the Court issue a ruling that Louisiana law governs the arbitration proceedings in this case.[26] The arbitration clause at issue requires any arbitration to be conducted in Nashville, Tennessee, but it does not contain a choice-of-law provision.[27] Because the insured and insured property are located in Louisiana, the damage occurred in Louisiana,

---

[26]   R. Doc. 15 at 24-25.
[27]   R. Doc. 1-3 at 38.

13

and the policy was delivered and issued in Louisiana, plaintiffs contend that the dispute is governed by Louisiana law.[28]

The Court need not determine this choice-of-law issue. As previously discussed, the Court must engage in "only a very limited inquiry" at this stage of the proceeding, confined to determining the applicability of the New York Convention to the arbitration clause at issue here. *See Freudensprung*, 379 F.3d at 339. The Court resolved this narrow issue, finding that the parties' arbitration agreement in the insurance policy was validly formed and enforceable under the Convention. It is thus unnecessary for the Court decide which state's law governs arbitration in this case. *See Anderson v. Waffle House, Inc.*, 920 F. Supp. 2d 685, 691 n.3 (E.D. La. 2013) (finding same); *Maxwell Heirsch, Inc. v. Velocity Risk Underwriters, L.L.C.*, No. 23-495, 2023 WL 4763104, at *4 (E.D. La. July 26, 2023) (same). The Court leaves the choice-of-law issue to the arbitrators. Accordingly, the Court denies plaintiffs' choice-of-law request.

### D. Stay Pending Arbitration

Having found that plaintiffs' claims are subject to a valid arbitration agreement and, therefore, must be submitted to arbitration, the Court must

---

[28] R. Doc. 15 at 24-25.

14

now determine whether to dismiss or stay the action pending arbitration. The New York Convention and its implementing legislation do not explicitly authorize a court to stay litigation pending arbitration; thus, parties whose arbitration agreements fall under the Convention must seek authority for stays under section 3 of the FAA. *Todd*, 601 F.3d at 332. Section 3 provides that, when claims are properly referable to arbitration, the Court "shall[,] on application of one of the parties[,] stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3.

Here, defendants have applied for a stay pending arbitration, and such a stay is mandatory under section 3. Although defendants sought dismissal in the alternative, dismissal is discretionary, not mandatory. *See Apache Bohai Corp. LDC v. Texaco China, B.V.*, 330 F.3d 307, 311 n.9 (5th Cir. 2003); *see also Fedmet Corp. v. M/V Buyalyk*, 194 F.3d 674, 676 (5th Cir. 1999) ("[D]istrict courts have discretion to dismiss cases in favor of arbitration."). Because defendants have not explained why dismissal, rather than a stay, is warranted, the Court declines to exercise its discretion to dismiss the matter.

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS defendants' motion to compel arbitration. IT IS ORDERED that the matter is STAYED and ADMINISTRATIVELY CLOSED pending arbitration.

New Orleans, Louisiana, this __4th__ day of December, 2023.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE